UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALEXANDER MARTIN,<br><br>      Plaintiff,<br><br>      v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>      Defendant. | MASTER FILE: 06-CV-2480<br>(WJM)<br><br><br>OPINION<br><br>HON. WILLIAM J. MARTINI |

Patricia M. Franklin
81 Halsey Street
P.O. Box 32207
Newark, NJ 07102

(*Counsel for Plaintiff*)

Vernon Norwood
Social Security Administration
Office of the General Counsel
26 Federal Plaza
Room 3904
New York, NY 10278

(*Counsel for Defendant*)

**WILLIAM J. MARTINI, U.S.D.J.:**

      Alexander Martin appeals from a decision of the Commissioner of Social Security denying his application for social security disability insurance benefits. Martin claims that the ALJ erred by finding that Martin retained the residual functional capacity to perform his past relevant work as a warehouse worker. This Court agrees insofar as the

ALJ failed to explain why it found Martin's testimony not credible and insofar as the ALJ failed to sufficiently develop the record to properly determine whether Martin's past warehouse work was relevant. Accordingly, the Commissioner's decision is **REVERSED** and **REMANDED**.

I.   **FACTS AND PROCEEDINGS**

Alexander Martin is a middle-aged man with a history of psychological disorders, including depression, bipolar disorder, and drug abuse. Martin was born in 1961, and after graduating from high school, he served briefly in the Air Force. (R. 30–32.) After leaving the Air Force, Martin worked as a corrections officer at Rahway Prison from 1987 until 1995. (R. 33.) By 1995, Martin had began abusing heroin, making it difficult for him to interact with his coworkers and the inmates. (R. 33–34; 159.) The prison accordingly forced him to resign. (R. 33–34.)

After his resignation from Rahway Prison, Martin worked sporadically as a warehouse laborer (among other odd jobs), but his psychological problems and continued heroin use prevented him from maintaining steady employment. (R. 34, 101, 159.) Martin's warehouse employment generally required him to move boxes around the warehouse, some of which weighed over fifty pounds, and to label the boxes with stickers. (R. 34–35.) Martin had difficulty remembering how to label these boxes properly, so he lasted an average of only a month and a half at each job. (R. 35.)

By 2003, Martin's psychological problems, including his drug addiction, had

2

become quite serious. On February 14, 2003, he was admitted to the Medical Center at Princeton, where he remained until February 20, 2003. (R. 159.) There he was diagnosed with opiate dependence and withdrawal, "polysubstance abuse," peptic ulcer disease, and an unspecified depressive disorder. (R. 159, 162.)

In April 2003, Martin applied for social security disability benefits. (R. 93.) In his application, Martin alleged that he had been unable to work since January 15, 2001, due to his psychological problems. (R. 93.) The Social Security Administration denied his application on the grounds that Martin's disability resulted from his drug use.[1] (R. 52–61.) Martin requested a hearing before an ALJ (R. 64), which was held on January 25, 2005 (R. 24).

At the hearing, Martin testified that he still suffered from serious psychological ailments. Martin testified that he hears voices telling him to kill himself and his family. (R. 41.) He testified that he panics around other people and that he cannot be near a crowd. (R. 38.) Martin also testified that he has a difficult time making any productive use of his days, noting that his concentration is poor, that his medicine makes him drowsy, and that he is still depressed. (R. 40–44.)

In contrast to this testimony, the medical evidence suggested that Martin's

---

[1] The Social Security laws state that "[a]n individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C) (2000).

3

condition had improved in the months preceding trial.  The record shows that Martin had stopped using heroin in May 2004.  (R. 20, 35.)  By late 2004 Martin was regularly taking prescribed medication and was attending monthly visits at a Veterans Administration clinic.  (R. 21–22, 253–81.)  Dr. Alexander Shnayderman reported on August 2, 2004, that Martin was "calm and cooperative," "mildly depressed," "logical," and had fair insight and judgment.  (R. 274.)  Indeed, Martin himself stated in these reports that he was feeling better.  (R. 255–56, 262, 274–76, 278).  Based on these reports a medical expert, Dr. William Gordon, stated in his own report that Martin's depression had gone from "severe" to "moderate."  (R. 287.)  Faced with a conflict between these reports and Martin's testimony, the ALJ credited the reports, finding Martin's testimony not credible. (R. 23.)

The ALJ concluded that Martin was not entitled to any disability benefits.  (R. 23.) The ALJ found that Martin was disabled prior to May 2004 but that he was not entitled to disability benefits for that period because his drug addiction was a contributing factor material to the finding of disability.  (R. 23.)  The ALJ also found that Martin was not disabled after May 2004 because after that date he was capable of performing his past relevant work as a warehouse worker.  (R. 23.)  In support of this latter finding, the ALJ found that Martin retained the residual functional capacity to understand, remember, and follow simple instructions; to respond appropriately to supervision and coworkers; and to deal with changes in a routine work setting.  (R. 23.)  Martin appealed this decision to the

Appeals Council (R. 12–14), which denied Martin's request for review (R. 5–7).

Martin now appeals the Commissioner's decision. Martin argues that the ALJ erred by finding that Martin had the residual functional capacity after May 2004 to perform his past relevant work as a warehouse worker. (Appellant's Br. 15–24.)

## II.   STANDARD OF REVIEW

This Court reviews the ALJ's application of the law de novo, Poulos v. Comm'r of Social Sec., 474 F.3d 88, 91 (3d Cir. 2007), but will overturn the ALJ's factual findings only if they are not supported by substantial evidence. Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000). In reviewing the ALJ's factual findings, this Court may not "weigh the evidence or substitute its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). The requirement that factual findings are supported by substantial evidence is not onerous, requiring only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988) (quoting Consol. Edison Co. of N.Y. v. NLRB, 305 U.S. 197, 229 (1938)).

## III.   DISCUSSION

The Social Security Administration has promulgated a five-step evaluation process to determine whether a claimant is disabled. Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004) ; *see* 20 C.F.R. § 404.1520. First, if the claimant is currently engaged in substantial gainful activity, he is considered not disabled. § 404.1520(a)(4)(i). Second, if

the claimant does not suffer from a "severe" impairment, he is considered not disabled. § 404.1520(a)(4)(ii).  Third, if the claimant suffers from an impairment that meets or medically equals an impairment listed in appendix 1 of 20 C.F.R. part 404, subpart P, he will be considered disabled. § 404.1520(a)(4)(iii).  Fourth, if the claimant retains the "residual functional capacity" ("RFC") to perform his past relevant work, he is considered not disabled. § 404.1520(a)(4)(iv).  Fifth, and finally, if the claimant retains the RFC to perform other work, he is considered not disabled. § 404.1520(a)(4)(v).

Here, the ALJ proceeded through the first three steps of this analysis, finding (1) that after May 2004 Martin was not engaged in substantial gainful activity, (2) that Martin suffers from severe depression, and (3) that Martin does not suffer from an impairment that meets or medically equals one of the impairments listed in appendix 1 of 20 C.F.R. part 404, subpart P.  (R. 22–23.)  But the ALJ then found at step four that since May 2004 Martin retains the RFC to perform his past relevant work as a warehouse worker and accordingly held that Martin was not entitled to disability benefits.  (R. 23.)  The issue in this appeal is whether the ALJ erred at this step.

The determination of whether a claimant retains the RFC to perform past relevant work requires three steps.  <u>Burnett v. Comm'r of Social Sec. Admin.</u>, 220 F.3d 110, 120 (3d Cir. 2000).  First, the ALJ must make specific findings about the claimant's RFC.  <u>Id.</u>  Second, the ALJ must make specific findings about the physical and mental demands of the claimant's past relevant work.  <u>Id.</u>  Third, the ALJ must compare the claimant's RFC

6

to the demands of the claimant's past relevant work to determine whether the claimant can perform that work.  Id.

  **A.**  **The ALJ's Determination of Martin's RFC**

Martin claims that the ALJ erred in its determination of Martin's RFC.  Martin argues that the ALJ erred by finding that Martin's testimony about his own functional limitations was not credible.  (Appellant's Br. 24.)  This Court agrees.

An individual's RFC is the most that an individual can do despite the limitations caused by his impairments.  Burnett, 220 F.3d at 121; Pearson v. Barnhart, 380 F. Supp. 2d 496, 505 (D.N.J. 2005).  Determining a claimant's RFC requires a function-by-function assessment of the claimant's limitations based on all the relevant evidence, including the claimant's testimony.  Pearson, 380 F. Supp. 2d at 505–06 (citing S.S.R. 96-8p); see Schaudeck v. Comm'r of Social Sec. Admin., 181 F.3d 429, 433 (3d Cir. 1999); 20 C.F.R. § 404.1529(a) (2006).  The claimant's testimony regarding his own functional limitations is entitled to great weight.  Schaudeck, 181 F.3d at 433.  The responsibility to ascertain and weigh the credibility of a claimant's testimony lies primarily with the ALJ. See Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005).

To be sure, the ALJ may disregard a claimant's testimony if the ALJ finds the testimony not credible.  Id.  For example, the ALJ may find that the claimant's testimony was internally inconsistent or contrary to the overwhelming weight of medical evidence. Id.  But if the ALJ is going to discount a claimant's testimony as not credible, the ALJ

must make specific findings explaining this decision. Id. at 554; Schaudeck, 181 F.3d at 433. Such findings are necessary to allow appellate review. Schaudeck, 181 F.3d at 433." As stated in Social Security Ruling 96-7p:

> It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. S.S.R. 96-7p.

Here, the ALJ failed to adequately support its finding on Martin's credibility. The ALJ stated that "[t]he undersigned finds the claimant's allegations regarding his limitations since May 2004 are not totally credible for the reasons set forth in the body of the decision." (R. 23.) But at no point does the ALJ set forth these reasons. This cursory analysis fails to satisfy the requirement of Social Security Regulation 96-7p that a determination of a claimant's credibility must "contain specific reasons for the finding on credibility."

Assessing Martin's RFC is material to the outcome of this case. An error at this step negates the validity of the ALJ's subsequent determination that Martin retains the RFC to perform his past relevant work. Accordingly, this Court must remand Martin's

case for further findings about the credibility of Martin's testimony.[2]

### B.     The ALJ's Analysis of Martin's Past Relevant Work

With respect to the ALJ's assessment of Martin's past relevant work and his ability to perform it, Martin alleges three errors. First, Martin alleges that the ALJ erred by finding that his warehouse work constituted past relevant work. (Appellant's Br. 20.) This Court agrees.

Past relevant work is defined as "substantial gainful activity" performed within the last fifteen years that lasted long enough for the individual to learn how to do it. 20 C.F.R. § 404.1565(a). Whether employment constitutes "substantial gainful activity" generally depends upon the claimant's earnings in that employment; if the claimant earned monthly pay in this employment that exceeded monthly rates set forth in 20 C.F.R. § 404.1574(a)(1), the claimant will generally have been considered to be engaged in substantial gainful activity. However, § 404.1574(c) states that if the claimant worked at a job for less than three months before his impairment forced him to stop working, then that employment does not constitute substantial gainful activity. The regulations label such short-term employment an "unsuccessful work attempt." § 404.1574(c).

Here, the ALJ has failed to develop the record or make findings sufficient to

---

[2]Martin makes other arguments to support his claim that the ALJ erred when evaluating his RFC. For example, Martin argues that the ALJ failed to consider each possible mental function that might be impaired by Martin's condition. (Appellant's Br. 17.) But the merit of these arguments depends upon whether the ALJ properly refused to credit Martin's testimony, a question this Court is presently unable to answer. Thus, this Court declines to address Martin's other arguments.

9

determine whether Martin's warehouse employments were unsuccessful work attempts or whether they may constituted substantial gainful activity. The ALJ stated broadly that "the claimant has past relevant work as a warehouse worker from 1995 to 2003." (R. 22.) The ALJ based this assertion on a Work History Report in which Martin stated that he worked as a warehouse "packer" from 1995 until 2003. (R. 131.) But in another, more specific Work History Report, Martin stated that between 1995 and 2003 he worked in the warehouses of three different businesses—ShopRite, Pathmark, and Key Food—for only a month or two at each place. (R. 123.) Indeed, this latter report is the accounting of Martin's employment that both he and the Commissioner accept in their briefs to this Court. (Appellant's Br. 20; Appellee's Br. 16.) The ALJ failed to explain how he determined the precise length of Martin's warehouse employment and apparently failed to consider whether Martin's warehouse employment was an unsuccessful work attempt for the purposes of § 404.1574(c). On remand the ALJ should perform these tasks.

Second, Martin alleges that assuming his warehouse work constituted substantial gainful activity, the ALJ erred in its description of that work. (Appellant's Br. 21.) Specifically, Martin argues that the ALJ failed to fully question him and develop the record regarding the physical and mental demands of warehouse work. (Appellant's Br. 21.) This argument is unpersuasive.

In determining the demands of past relevant work, ALJs may use a variety of information sources. The claimant should be the primary source: "statements by the

claimant regarding past work are generally sufficient for determining the skill level, exertional demands and nonexertional demands of such work." Burnett, 220 F.3d at 123 (quoting S.S.R. 82-62). Aside from the claimant's testimony, the ALJ may also look to commonly accepted occupational guides, such as the Dictionary of Occupational Titles ("DOT"). 20 C.F.R. § 404.1560(b)(2).

Here, the ALJ properly determined that Martin's warehouse work required minimal discretion, memory, or judgment. (R. 22.) The ALJ appeared to evaluate the content of Martin's warehouse work primarily from Martin's testimony. At the hearing, Martin testified that his warehouse work generally consisted of manually moving and labeling boxes, some of which weighed up to seventy pounds. (R. 34–35.) The ALJ reiterated this description in his opinion. (R. 21.) The ALJ also looked to the DOT, specifically to its description of "warehouse worker." U.S. DEP'T OF LABOR, DICTIONARY OF OCCUPATIONAL TITLES 922.687-058 & app. C (4th ed., rev. 1991). The DOT entry for "warehouse worker" states that such a employee receives, stores, and distributes products within establishments; conveys materials and items to different areas; and marks materials with identifying information. Id. This description fits Martin's description of his work, so the ALJ did not err by relying on it. Additionally, the DOT states that the position of warehouse worker requires little judgment or interaction with people, a description that comports with Martin's description. Id. Thus the ALJ's determination that the position of warehouse worker requires little discretion, memory, or judgment is supported by

11

substantial evidence.

Third, Martin argues that the ALJ erred in evaluating his past relevant work by relying on "inconsistent documentation." (Appellant's Br. 20.) This argument defies comprehension. In support of this argument, Martin states that the ALJ focused on two "inconsistent" sets of earning statements: (1) a 1995 statement reporting that Martin earned $1,291.50 working for Gemini Sound Products Corporation and $3,633.45 working for WIZ Distributors Limited, both of which were non-warehouse employers, and (2) a 1994 statement documenting a salary for that year of $38,025.36. (Appellant's Br. 20; R. 101.) But it is not evident how these earning statements are inconsistent or that the ALJ relied on them. Indeed, the ALJ's opinion mentioned neither these statements or Martin's jobs with Gemini and WIZ. Thus, this argument is without merit.

## IV. CONCLUSION

The ALJ erred by finding that Martin had the RFC to perform his past relevant work as a warehouse worker insofar as the ALJ failed to explain why it found Martin's testimony not credible and insofar as the ALJ failed to sufficiently develop the record to determine whether Martin's warehouse work constituted substantial gainful employment. The Commissioner's decision is accordingly **REVERSED** and **REMANDED**.

s/ William J. Martini

William J. Martini, U.S.D.J.